UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>       v.<br><br>BAO TU LUU,<br><br>         Defendant. | Case No.  25-mj-70394-TSH-1<br><br>**CERTIFICATION OF EXTRADITABILITY TO SECRETARY OF STATE** |

On April 3, 2025, the United States filed a criminal complaint charging Defendant Bao Tu Luu with being a fugitive from Australia, which sought his provisional arrest with a view towards extradition on the charge of one count of conspiracy to import a border controlled drug in a commercial quantity, in violation of subsection 307.1(1) of the Criminal Code Act of 1995 by virtue of subsection 11.5(1).  ECF No. 1.  An arrest warrant was issued the same day.  ECF No. 2. Luu made his initial appearance on June 30, 2025.  ECF No. 12.

On August 11, 2025, Australia submitted a formal extradition request to the United States. EXT-LUU-041 to -042.  The documents submitted by Australia in support of its extradition request were certified on August 6, 2025 by the Charge d'Affaires of the U.S. Embassy in Australia, the principal diplomatic officer of the United States resident in Australia, pursuant to 18 U.S.C. § 3190.  EXT-LUU-043.  The public version of the original extradition record was filed in this action on August 18, 2025, as attachment A to ECF No. 21.  It is 108[1] pages long.[2]  On

---

[1] There is a typo in the third paragraph of the declaration of Colin Sampson at ECF No. 21, stating that the extradition record is 408 pages.

[2] An under seal version was filed on August 15, 2025, as attachment A to ECF No. 17.  The public version redacts additional personally identifying information that is contained in the sealed version.

January 27, 2026, the government filed supplementary extradition papers.  ECF No. 34.  These too are certified by the Charge d'Affaires pursuant to 18 U.S.C. § 3190.  EXT-LUU-110.  They are eight pages long.  The original extradition record is consecutively Bates labeled EXT-LUU-#####.  The supplemental papers continue the consecutive numbering, but add "2025" as the prefix and have six digit numbers.  The Court cites to both in the format EXT-LUU-###.[3]

The parties filed briefs on the merits of the extradition request at ECF Nos. 27, 28, 30, 31, 32 and 33.  Pursuant to 18 U.S.C. § 3189, the Court held a hearing, open to the public, on January 29, 2026 in Courtroom E on the 15th floor of 450 Golden Gate Avenue, San Francisco, CA.  The Court now deems evidence sufficient to sustain the charge and **CERTIFIES** the same to the Secretary of State.  18 U.S.C. § 3184.

## A.    DISCUSSION

The requirements for certification on extraditability are as follows:  (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crime for which surrender is requested is covered by the treaty; (5) there is sufficient evidence to support a finding of probable cause that the fugitive committed the offense for which extradition is sought; and (6) extradition is not otherwise barred by the treaty.  *See Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008) (listing first five factors); *see also Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000) (court "must also assess whether any of the applicable treaty provisions bar extradition of the alien for any of the charged offenses").

### 1.    Court with Authority

A magistrate judge sitting in the Northern District of California has jurisdiction to conduct an extradition hearing.  *See* 18 U.S.C. § 3184 and Criminal Local Rule 7-1(b)(13).  Thus, this Court is authorized to conduct the extradition hearing in this case.

### 2.    Jurisdiction over the Fugitive

The Court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18

---

[3] At the January 29, 2026 hearing, the Court admitted the original extradition record and the supplemental papers in evidence.

United States District Court
Northern District of California

U.S.C. § 3184. Luu was arrested on the extradition warrant within the Northern District of California, and therefore this Court has jurisdiction over him.

### 3. Treaty in Full Force and Effect

Section 1384 authorizes extradition whenever there "is a treaty or convention for extradition between the United States and any foreign government," 18 U.S.C. § 1384. Here, the relevant and applicable treaty provisions in full force and effect between the United States and Australia are found in the Treaty on Extradition between the United States of America and Australia of May 14, 1974 (the "Treaty"), and the Protocol Amending the Treaty on Extradition between the United States of America and Australia of May 14, 1974, signed September 4, 1990 (the "Protocol"). Heinemann Decl. ¶ 2, EXT-LUU-001. These are reproduced in the record at EXT-LUU-003 to -040.

### 4. Crime Is Covered by the Treaty

Australia has charged Luu with one count of conspiring to import a commercial quantity of a border controlled drug, namely cocaine, between about September 21, 2016, and June 29, 2017, in violation of Sections 11.5(1) and 307.1(1) of the Criminal Code. Hwang Aff. ¶ 4, EXT-LUU-046. Article II of the Treaty, as amended by Article 1 of the Protocol, requires the United States to extradite to Australia a fugitive charged with an extraditable offense. EXT-LUU-026 and EXT-LUU-007.

The Treaty classifies an offense as extraditable if it is "punishable under the laws in both Contracting Parties by deprivation of liberty of more than one year, or by a more severe penalty." Protocol Article 1, EXT-LUU-007. This is known as the dual criminality requirement. "Dual criminality exists if the essential character of the acts criminalized by the laws of each country are the same and the laws are substantially analogous." *Manta*, 518 F.3d at 1141 (cleaned up). "To satisfy dual criminality, the name by which the crime is described in the two countries need not be the same, nor does the scope of liability for the crime need to be the same." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1405 (9th Cir. 1988). "[T]o satisfy the 'dual criminality' requirement, each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is enough that the conduct involved is

3

United States District Court
Northern District of California

criminal in both countries." *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986).

Here, the alleged crime is that Luu conspired with others to import 78 kilograms of cocaine. Hwang Aff. ¶ 8, EXT-LUU-047. Had that crime been committed in the United States, it would have violated 21 U.S.C. § 846. The elements of this offense are (1) an agreement between two or more people to violate the law; (2) the defendant had knowledge of the agreement and its unlawful purpose; (3) the defendant knowingly and voluntarily joined the agreement with the intent to help achieve the conspiracy's illegal objective; and (4) the object of the conspiracy was to commit a federal drug crime. Here, Luu is accused of engaging in an elaborate scheme with others to import 78 kilograms of cocaine into Australia, and Luu's alleged criminal acts, as laid out by Australia, would meet the elements required to be charged with a violation of 21 U.S.C. § 846. Both the U.S. statute and the Australian statute (Criminal Code §§ 11.5(1) and 307.1(1)) criminalize essentially the same conduct and are substantially analogous because they operate to reach and criminalize the same type of conduct. *See* Hwang Aff. ¶ 24, EXT-LUU-049. The U.S. crime has a mandatory minimum sentence of 10 years in prison and a maximum sentence of life. 21 U.S.C. § 841(b)(1)(A). The Australian crime has a penalty of imprisonment for life and/or a fine of AUD 1,350,300. Hwang Aff. ¶ 23, EXT-LUU-049; *see also* Hwang Aff. ¶ 12, EXT-LUU-0047 (penalty under section 11.5(1) same as for underlying offense).

Accordingly, this alleged crime is covered by the Treaty.

**5.     Probable Cause**

     **a.     Probable Cause That He Is Guilty**

Australia's showing of probable cause is set forth in the July 24, 2025 Affidavit of Nicholas Petrecca of the Australian Federal Police, set forth in the record at EXT-LUU-072 to -096. The affidavit is 60 paragraphs long and goes into elaborate detail describing the evidence against Luu. The Court does not see a need to summarize the Petrecca affidavit, which easily establishes probable cause. Further, although the Defendant contends there are some contradictions and errors in the record, he does not present any argument that the affidavit somehow fails to show probable cause that Luu conspired to import a commercial quantity of a border controlled drug.

**b.    Defendant's Arguments That the Record Has Contradictions or Holes in It**

While not directly disputing Australia's showing of probable cause, Defendant indirectly seeks to sow doubt about the evidentiary record.  He contends that "[t]he documents and information provided by Australia . . . offer irreconcilable information regarding the timing of the charges and arrest warrant(s) against Mr. Luu in Australia."  ECF No. 28 at 3.

In fact, that is not true.  An arrest warrant was first issued for Luu on March 29, 2019.  It was revoked on March 31, 2025 due to a typographical error, and on April 2, 2025 the court "re-issued a warrant for the arrest of LUU in respect of the *same offense*."  Hwang Aff. ¶¶ 6, 7, EXT-LUU-047 (emphasis added).[4]  Thus, the statement in paragraph 32 (under the heading "Double Jeopardy") of the Hwang affidavit that "LUU has not previously been charged with the offense and he is not entitled to be discharged under any rule of law relating to previous acquittal or conviction," EXT-LUU-051, does not contradict the March 2019 arrest warrant.  The 2019 and 2025 arrest warrants were for the same offense.  Paragraph 32's reference to Luu not having been "previously" charged with the offense means previous to March 2019.

The Petrecca affidavit states in paragraph 57:  "From the point the charge against LUU was filed and the arrest warrant issued, he has predominantly remained in Ho Chi Minh City, with the exception of some short trips of Thailand. . . . Since LUU was charged, his associates that were arrested in Australia have been convicted of similar charges and have all received custodial sentences."  EXT-LUU-096.  The Hwang affidavit says in paragraph 31 that the co-conspirators were sentenced in 2021.  EXT-LUU-050 to -051.  These affidavits do not contradict each other because Luu was charged and an arrest warrant was issued in March 2019, and 2021 is after 2019.  Similarly, Petrecca's statement that "[s]ince Luu was charged" does not contradict Hwang's

---

[4] In the supplemental papers, Hwang further states that the typographical error in the March 29, 2019 warrant was the "date of the offence period," which did not invalidate the charge-sheet, and thus the March 29, 2019 warrant "was in full force and effect from its issuance on 29 March 2019 until its revocation on 31 March 2025."  EXT-LUU-113 to -114.  On March 31, 2025 a new arrest warrant was issued and then revoked on April 2, 2025 due to another typographical error, namely Luu's date of birth.  Hwang states that this warrant "was not invalid due to the birthdate error and was in full force and effect" from its issuance until it was revoked on April 2, 2025.  EXT-LUU-114.  Finally, the current warrant was issued on April 2, 2025.  EXT-LUU-114; EXT-LUU-098 to -101 (warrant).

United States District Court
Northern District of California

statement "LUU has not previously been charged" because, again, Hwang meant previous to March 2019.

Defendant argues:  "Moreover, while the Hwang Aff. does not include any mention of charges being instituted, or of an arrest warrant being issued, between 2017 and 2021, the period referenced in the Petrecca Aff., the only conclusion consistent with the Petrecca Aff. is that Mr. Luu was charged and an arrest warrant issued at roughly the same time as his alleged co-conspirators, in 2017."  ECF No. 28 at 4.  But that is wrong because the Hwang affidavit does mention an arrest warrant in 2019.  Hwang Aff. ¶ 6, EXT-LUU-047.

Defendant further challenges the statement by Petrecca in paragraph 57 that Luu, since he was charged, "has predominantly remained in Ho Chi Minh City, with the exception of some short trips of Thailand" and there is no record of traveling to Australia or the United States until his arrest in 2025, EXT-LUU-096, by pointing to his passports.  ECF No. 28-1.  But the government responds that "a careful analysis of LUU's passports confirms that after Australia charged him on March 29, 2019, he predominately remained in Vietnam (over 361 days), with trips to Thailand (112 days), and with no trips to the United States or Australia as stated by Investigator Petrecca."  ECF No. 30 at 14.

Luu further argues that he did travel to the United States at least in 2021 to renew his driver's license, and then again in 2025 when he was arrested.  ECF No. 31 at 5-6.  He acknowledges that these travels to the United States were not stamped in his passports but contends that U.S. Customs should have recorded his entry.  *Id*. at 5.  The 2025 trip does not contradict Petrecca's affidavit.  The evidence for the 2021 trip is Luu's previous driver's license, which he says he renewed in person in 2021.  ECF No. 33-1 (driver's license).  It has an issue date of October 1, 2021, and an expiration date of January 1, 2026, which is consistent with a 2021 renewal.  *See* Cal. Veh. Code § 12816(b) (driver's license renewal is good for five birthdays).  Assuming this renewal was done in person,[5] and assuming he entered the United States by plane (which is likely), Luu is probably correct that the United States has a record of his entry in 2021.

_____

[5] At the hearing, Luu's counsel stated that Luu had to do this renewal in person because his prior driver's license had expired.

This calls into question Petrecca's statement that "[u]ntil now, there has been no record of LUU traveling to the United States of America" in his 2025 affidavit. Petrecca Aff. ¶ 57, EXT-LUU-096. However, a minor error about an issue that doesn't matter[6] hardly invalidates Australia's showing of probable cause.

In short, Luu has failed to show there are any meaningful contradictions or important errors in the record that would undermine probable cause.

### 6.    Extradition Is Not Otherwise Barred by the Treaty

Luu's primary argument against extradition is that it is barred by Article VII of the Treaty, which states in relevant part that "Extradition shall not be granted in any of the following circumstances: . . . (b) when the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State." EXT-LUU-031. Here, the requesting state is Australia. Luu argues "an interpretation of 'laws' refers to the laws of the Australian legal system, including statutes, common law, and international law." ECF No. 28 at 9. He argues that for various reasons, an Australian court would find that Australia unreasonably delayed in seeking his extradition. *Id*. at 13-23. The government argues that lapse-of-time provisions "refer exclusively to statutes of limitation," ECF No. 30 at 2. There is no dispute that Australia has no statute of limitations for an offense whose maximum penalty is more than 6 months in prison for a first offense. Hwang Aff. ¶ 26, EXT-LUU-050. Thus, if the government is correct about the meaning of the lapse-in-time provision, it does not bar Luu's extradition.

And the government is correct. In *Martinez Santoyo v. Boyden*, the Ninth Circuit

---

[6] If you are wondering why Luu is disputing how often he was in Vietnam and whether he previously visited the United States, here is the reason: Luu argues that Australia unreasonably delayed seeking his extradition. He appears not to fault Australia for not seeking his extradition while he was in Vietnam because he is a dual U.S.-Vietnamese citizen. EXT-LUU-041. The government claims that Vietnam does not extradite its own citizens, ECF No. 1-1 at 5 ¶ J, and while Luu disputes that categorical assertion, he does acknowledge that Vietnam is permitted under the applicable treaty to refuse to extradite its own nationals. ECF No. 28 at 18 n.6. Thus, his argument that Australia should have tried to extradite him sooner focuses on those occasions when he was present in a country that has an extradition treaty with Australia and that would have been willing to extradite him. His argument that Petrecca has exaggerated how often Luu was in Vietnam is part of his factual contention that Australia had prior opportunities to extradite him and failed to do so. Below the Court concludes that this factual argument is legally irrelevant to extradition.

United States District Court
Northern District of California

considered the extradition treaty between the United States and Mexico, which has a very similar lapse-in-time provision:  "Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party."  130 F.4th 784, 788 (9th Cir.), *cert. denied*, 146 S. Ct. 149 (2025).  The Court of Appeals explained:  "The parties to the treaty, a Senate Committee report, courts, and the Restatement (Third) of Foreign Relations Law . . . have consistently read the 'lapse of time' language as a statutes of limitations bar."  *Id*. at 790.  "The Senate Committee on Foreign Relations' report on the extradition treaties with various countries, including Mexico . . . reads the 'lapse of time' provision as a statute of limitations provision."  *Id*.  "Courts have likewise read the 'lapse of time' language in extradition treaties as statutes of limitations bars."  *Id*. (citing *Martinez v. United States*, 828 F.3d 451, 462 (6th Cir. 2016) ("Every case on the books has concluded that this phrase encompasses only statutes of limitations.")); *accord Yapp v. Reno*, 26 F.3d 1562, 1567 (11th Cir. 1994) ("Weighing heavily against Yapp's position is the fact that for over a century, the term 'lapse of time' has been commonly associated with a statute of limitations violation.").

Indeed, the Ninth Circuit has specifically held that the lapse-in-time provision in Article VII of the Treaty at issue in this case means the statute of limitation.  In *Kamrin v. United States*, the plaintiff sought a writ of habeas corpus to bar his extradition to Australia.  725 F.2d 1225, 1226 (9th Cir. 1984).  He had been "charged in Australia with conspiracy to cheat and defraud and with defrauding persons by making willfully false pretenses regarding investments in car wash franchises in that country," *id*. at 1226-27.  The Court of Appeals observed that "Australia has no statute of limitation for these crimes."  *Id*. at 1227.

The plaintiff attempted to invoke the United States' statute of limitation for such charges, and the Court of Appeals explained:  "Article VII of the Treaty provides that '[e]xtradition shall not be granted . . . when the prosecution for the offense has become barred by lapse of time according to the laws of the *requesting* state.'  The Treaty, art. VII(1)(b) (emphasis added).  The prosecution is not time-barred in Australia, the requesting state here."  *Id*. at 1227.  And, again, the reason the prosecution was not time-barred in Australia was that "Australia has no statute of

8

limitation for these crimes." *Id*. at 1227.

The Court noted that "[w]hen the United States is the requested country, delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward. The delay may not, however, serve as a defense to judicial extradition proceedings." *Id*. And the Court held that "[t]he extradition treaty between Australia and the United States has not provided a different mode than application of the requesting state's statute of limitation." *Id*. at 1228

*Kamrin* is directly on point and controls. The Ninth Circuit's statement that "[t]he prosecution is not time-barred in Australia, the requesting state here," *id*. at 1227, is part of the opinion's holding, not dicta, because it was part of the Court's explanation for why it was rejecting the plaintiff's attempt to invoke the lapse-in-time provision in Article VII of the Treaty. And the opinion also stated the basis for that holding: "Australia has no statute of limitation for these crimes." *Id*. *Kamrin* therefore holds that the lapse-in-time provision in the Treaty means, and means only, a statute of limitation. But even if *Kamrin* were not directly controlling, the Ninth Circuit's later and more extensive discussion of lapse-in-time provisions in *Martinez Santoyo* would lay the issue to rest. 130 F.4th at 790-91. Accordingly, the lapse-in-time provision in Article VII of the Treaty is a reference to Australia's statute of limitation, if any. As in *Kamrin*, there isn't one here. Because there are binding Ninth Circuit decisions directly on point, the Court does not see a need to discuss the other issues of treaty interpretation raised by the parties.

### 7.    Rights Under U.S. Law

Luu also argues that for various reasons under United States law, Australia's delay in seeking his extradition bars his extradition. He cites the Fourth and Fifth Amendments, the Bill of Rights generally, and the International Covenant on Civil and Political Rights ("ICCPR"), and argues that this delay has impaired his ability to receive a fair trial in Australia. ECF No. 28 at 23-34.

These arguments are foreclosed by precedent. As noted previously, "When the United States is the requested country, delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward. The delay may not,

United States District Court
Northern District of California

9

however, serve as a defense to judicial extradition proceedings." *Kamrin*, 725 F.2d at 1227. The Ninth Circuit reaffirmed that holding last year, observing that "[f]or more than forty years, the law on delay in extradition hearings has been clear: While a delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward . . . the delay may not, however, serve as a defense to judicial extradition proceedings." *Martinez Santoyo*, 130 F.4th at 788 (quoting *Kamrin*, 725 F.2d at 725) (cleaned up). Further, his reliance on the ICCPR is misplaced because the ICCPR "did not itself create obligations enforceable in the federal courts." *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004)).

**8.    Requests for Discovery**

In ECF No. 31, Luu makes various requests for discovery concerning what he calls "discrepancies" in the record. He argues: "Nor are any of these discrepancies immaterial or unimportant. Rather, they go to the very heart of the issue of 'unreasonable delay' recognized by Australian law." ECF No. 31 at 11. The Court does think the requested discovery relates to Luu's claim of unreasonable delay. Having concluded that his claim of unreasonable delay is not legally cognizable, the Court therefore denies the requested discovery.

**9.    Conclusion**

Pursuant to 18 U.S.C. § 3184, the Court **CERTIFIES** to the Secretary of State that the evidence is sufficient to sustain the charge. The Court **STAYS** this order for 14 days to enable Defendant to file a petition for a writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: January 29, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

10